## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | |
|---|---|
| HILL-ROM COMPANY, INC.,<br>HILL-ROM SERVICES, INC., and<br>HILL-ROM MANUFACTURING, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL ELECTRIC COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 2:14-CV-187-RGD-LRL

### DEFENDANT GENERAL ELECTRIC COMPANY'S OPPOSITION
### TO HILL-ROM'S MOTION FOR PRELIMINARY INJUNCTION

## I.    INTRODUCTION & BACKGROUND

Hill-Rom's request for a preliminary injunction—a drastic and extraordinary form of

relief that rarely should issue—is doomed on every front.[1]

First, Hill-Rom cannot show a likelihood of success on the merits of its patent

infringement claims.  To overcome the prior art in order to get the patents issued, Hill-Rom told

the U.S. Patent Office that systems that function like GE's Hand Hygiene System are not

covered by the asserted patent claims.  In fact, virtually all of Hill-Rom's infringement theories

raised in its motion were either specifically disclaimed, or else depend upon functionality that

---

[1] As explained in GE's pending motion to dismiss for lack of subject matter jurisdiction (ECF 36, 37), Hill-Rom Company, Inc. and Hill-Rom Manufacturing, Inc. also lack standing to bring this case.  Moreover, because the allegations in the complaint do not distinguish between the Plaintiffs, it is impossible to determine which allegations are attributable to Hill-Rom Services, Inc., the only plaintiff that may plausibly have standing.  Plaintiffs' failure to adequately plead standing is alone enough to defeat plaintiffs' preliminary injunction motion.  *See*, *e.g*., *Bushnell, Inc. v. Brunton Co*., 659 F. Supp. 2d 1150, 1166 (D. Kan. 2009) (denying preliminary injunction due to plaintiffs' lack of standing); *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (reversing grant of preliminary injunction because plaintiffs lacked standing).  GE's use of "Hill-Rom" is solely for convenience and is not a concession that Plaintiffs have standing to bring this case.

Hill-Rom's own expert acknowledged does not exist in GE's system.  Hill-Rom therefore is not likely to succeed on its infringement claims.  Moreover, in the event that Hill-Rom's infringement theories are accepted, as a consequence, the asserted claims would be invalid as having already been disclosed in the prior art.

Hill-Rom also cannot prove irreparable injury.  Although Hill-Rom now claims urgency in this matter, it waited over a year to bring suit.  GE began marketing its Hand Hygiene System in 2009, and by 2012, GE had already installed hundreds of hand-washing monitoring stations in the Summerville facility identified in Hill-Rom's motion.  GE also distributed information sheets there throughout the 2012 time period.  Hill-Rom thus knew or should have known about GE's system at least because Hill-Rom sells its own products at that same facility.  Tellingly, Hill-Rom admits that it knew about GE's system at least as early as "the Spring of 2013," but offers no explanation for waiting until May 2014 to bring this matter of supposed "immediate and irreparable harm" to the Court's attention.  Hill-Rom's delay is fatal to its motion.[2]

Hill-Rom also offers no credible evidence of any actual lost sales, market share, goodwill, price erosion, nor any evidence that GE's customers would buy hand-washing systems from *Hill-Rom* but for GE's alleged infringement. Instead, Hill-Rom's supporting declarations are replete with speculation and inadmissible hearsay. *See, e.g.,* McMullin Decl. at ¶ 29 ("I have been informed by HCA . . ."), ¶ 31 ("representatives of HCA have stated . . ."), ¶ 36 ("my discussions with HCA's leadership team . . ."), ¶ 37 ("the healthcare facility was told by HCA management . . ."), ¶ 41 ("I am informed and believe that. . ."); Wildman Decl. at ¶ 8 ("I spoke with hospital personnel . . ."), ¶ 10 ("I was informed that . . ."), ¶ 26 ("I was informed by hospital

---

[2] *See*, *e.g.*, *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) ("17 months is a substantial period of delay that militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief.").

staff . . .").  And there is good reason for Hill-Rom's utter lack of evidence to support its motion—of the nearly 6,000 hospitals in the United States, GE's Hand Hygiene System is presently installed in only five of them.  Of further significant importance are the facts that there are more than a dozen competitors in the market, GE's total revenues for the accused system is less than $400,000, and GE presently has no orders to install any further systems. Thus, Hill-Rom clearly has not been irreparably harmed by anything GE has done.  Moreover, to the extent GE succeeds in installing any additional systems in the short period before trial, Hill-Rom can easily be compensated with money damages, which is the antithesis of irreparable injury.

Finally, the balance of the hardships and the public interest weigh against an injunction. Hill-Rom waited nearly a decade after the earliest asserted patent issued before entering the relevant market, and Hill-Rom's success does not depend in any way upon the outcome of this case.  In fact, Hill-Rom has reported more than $1.6B in annual revenues, with only $5M (less than 0.3 percent) in hand-washing monitoring system sales. Moreover, hand-washing monitoring systems save lives, so preliminarily enjoining such sales would be against the public interest. For all of these reasons, Hill-Rom's request for a preliminary injunction should be denied.

## II.    THE RELEVANT TECHNOLOGY & GE'S AGILETRAC™ HAND HYGIENE SYSTEM

The technology at issue relates to monitoring a person's hand-washing in a healthcare facility.  Hill-Rom's patents disclose specific implementations for monitoring compliance with hand-washing policies, requiring the system to track healthcare workers' movement among "zones" as they come into contact with potentially contaminated people or equipment, in order to determine if the person may have become contaminated.  To minimize the hardware and software required for this system, Hill-Rom's patents further claim a sensor that can aggregate all of the pertinent data bits into a single package of information for analysis by a master station.

GE's accused AgileTrac™ Hand Hygiene System, although elegant in its operation, does not contain these features.  GE implemented its hand hygiene product as an "add-on" to GE's non-accused, existing Real-Time Location System (RTLS) infrastructure product, which has been used for years to keep track of equipment like hospital beds and wheelchairs.[3]  The "add-on" consists of a sensor mounted to hand-washing soap dispensers, and a software program.  This system does not track movement of people among zones, nor does it monitor contact between people or equipment or combine the relevant data bits into a single package of information for a master station.  And GE's system certainly does not determine if a person is contaminated, as Hill-Rom's patents describe.

Instead, GE's system uses ordinary infrared and radio frequency sensors to keep track of a person's location in a hospital, in much the same way that a hospital can track its beds and wheelchairs.  The soap dispensers use a separate sensor to send a signal when the dispenser handle is actuated.  Once per day, in the middle of the night, a software program compares the dispenser data with the location data to attempt to correlate hand-washing events with location change events.  The software then generates a report showing average hand-washing compliance over time.  As demonstrated below and in the supporting declaration of GE's expert, Dr. Gill Tsouri, GE's system does not read on the asserted claims.

## III.   LEGAL STANDARDS

A preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted."  *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004); *see also Pennington v. PNC Mortgage*, 2010 WL 8741958 at *2 (E.D. Va. Aug. 11, 2010) (Doumar, J.) ("[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a

---

[3] GE's system is described in detail in the accompanying declarations of Robert Wallace and Francis Dirksmeier.

clear showing that the plaintiff is entitled to such relief.") (denying motion for lack of standing) (internal citations omitted); *PRE Holding, Inc. v. Monaghan Med. Corp.*, 2009 WL 3874171 at *1 (E.D. Va. Nov. 17, 2009) (denying preliminary injunction); *H. Jay Spiegel & Associates, P.C. v. Spiegel*, 652 F. Supp. 2d 630, 634 (E.D. Va. 2008) (denying preliminary injunction).  In order to receive a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1373-74 (Fed. Cir. 2012) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  If a "clear showing" of entitlement with respect to any of the four factors is missing, a motion for a preliminary injunction must be denied.  Because the determination of likelihood of success is a matter of substantive patent law, district courts weighing preliminary injunctions apply Federal Circuit precedent. *See Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012).

A preliminary injunction cannot issue unless a patentee establishes that it is likely to succeed "on all disputed liability issues at trial." *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed. Cir. 1992).  No such showing is made where the defendant raises a "substantial question" as to either the validity of the asserted patents or the merits of the plaintiff's infringement case. *See Oakley Inc. v. Sunglass Hut Int'l.*, 316 F.3d 1331, 1340 (Fed. Cir. 2003) ("the injunction should not issue if the party opposing the injunction raises 'a substantial question' concerning infringement or validity").  The plaintiff bears the burden of proving that any defense the defendant raises "lacks substantial merit." *Id.*; *see also New Eng. Braiding Co.*, 970 F.2d at 883.  In order to raise a substantial question of validity, a defendant need not "make out a case of actual invalidity." *See Amazon.com, Inc. v. BarnesandNoble.com,*

*Inc.*, 239 F.3d 1343 at 1359 (Fed. Cir. 2001).  Satisfaction of the "substantial question" requirement merely requires a showing that the patents are *vulnerable* to an invalidity challenge at trial.  *See id.* ("Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial.").

## IV.   DISCUSSION

### A.   Hill-Rom Is Not Likely to Succeed on the Merits

####   *1.   GE's Hand Hygiene System Does Not Infringe Any of the Asserted Claims*

GE's system—which essentially is an add-on to its existing, non-accused RTLS architecture—works like the prior art systems that Hill-Rom repeatedly distinguished as different from its claimed invention during the prosecution of each of the asserted patents.  *See* Dirksmeier Decl. at ¶¶ 10, 25. Unsurprisingly, then, Hill-Rom's brief offers nothing but bare parroting of the claim language without any explanation of how GE's system allegedly infringes the asserted claims.  *See, e.g.,* Hill-Rom's PI Brief ("PI Brief") at 10-13.  Moreover, Hill-Rom's declaration from Mr. Wildman is replete with hearsay that does not inform how GE's Hand Hygiene System functions in any way that is actually relevant to the asserted claims.  *See, e.g.,* Wildman Decl. at ¶¶ 8, 10, 26.  And Hill-Rom's expert, Dr. Felder, attempts to read the asserted patents on GE's system in a way that Hill-Rom disclaimed in the prosecution history.  Dr. Felder and Mr. Wildman both inaccurately describe GE's system and otherwise acknowledge various missing elements in their own analysis.  Thus, Hill-Rom's brief and supporting evidence fall far short of demonstrating a likelihood of success on the merits.

In contrast, GE's evidence—the declarations of GE Global Product Manager Rob Wallace and hand-hygiene monitoring expert Dr. Gill Tsouri—confirm that GE's system does not infringe any of the asserted claims.  Dr. Tsouri even visited the very same Summerville facility that Dr. Felder and Mr. Wildman visited to confirm that his opinions are correct. Even

though, as noted below, simply raising substantial questions concerning infringement is enough to defeat this motion, the question here is not even close.  Among other things, GE's system does not include numerous elements that the asserted claims require, including: (1) tracking movement of people among zones to assess contamination; (2) tracking contact between people and other people or equipment; and (3) aggregating signal data into a single packet of information.  Hill-Rom's motion should therefore be denied.

a.      Legal Overview

To determine infringement, the Court must first construe the patent claims and then compare the properly construed claims to the accused device.  *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.,* 15 F.3d 1573, 1576 (Fed. Cir. 1993).  Infringement can be found only if each and every claim limitation is present in the accused product.  *General Elec. Co. v. Nintendo Co.,* 179 F.3d 1350, 1359 (Fed. Cir. 1999).  At this preliminary stage, the existence of a "substantial question" as to whether the accused product contains every element of the properly construed claims requires denial of Hill-Rom's motion.  *See Oakley*, 316 F.3d at 1339.  Hill-Rom has not— and cannot—establish infringement, let alone make the requisite *clear showing of infringement* given that the accused devices do not practice numerous limitations of each asserted claim.

b.      The '818 Patent

1)      *Independent Claim 1*

Hill-Rom alleges that GE's Hand Hygiene System infringes independent claims 1, 37, and 43, and dependent claims 2, 3, 6, 12-15,44, 45, 47, 48, 52, and 56 of the '818 Patent.  Independent claim 1 requires among other things a method "which tracks movement of a person through a facility."  But GE's system does not track movement and instead only records the present location of a person.  Tsouri Decl. at ¶¶ 46, 66-72, 75; Wallace Decl. at ¶ 20.  Hill-Rom's expert, Dr. Felder, opines that recording a person's present location is tracking movement.  Yet

his opinion is directly contrary to what Hill-Rom told the Patent Office, emphasizing that using sensors to track the current location of a person is *not* tracking movement.  Bosco Decl., Exhibit A ('818 File History ("FH") at 179.  Hill-Rom thus surrendered this claim scope and cannot now argue that GE's system tracks movement.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 723 (2002).

Claim 1 also requires determining if a person "washed her hands since her most recent exposure to a contamination zone other than her current exposure to the patient contact zone." GE's system undisputedly does not use the "zone manager" feature of the RTLS software and thus does not meet this limitation either.  Tsouri Decl. at ¶¶ 46-47, 73-78; Wallace Decl. at ¶¶ 20-21; Wildman Decl. at ¶ 29 ("I did not observe the zone manager in connection with my visit to study the hand hygiene system . . . .").  Indeed, GE's system does not determine if a person has been exposed to a contamination zone or a patient contact zone, and it certainly does not determine if a person washed her hands since moving from one such zone to another.  Tsouri Decl. at ¶ 46-47, 73-78; Wallace Decl. at ¶¶ 20-21.  Perhaps realizing after his visit to Sunnyvale that GE's system does not use the "zone manager" feature, Dr. Felder opines generally that the "contamination zone" in GE's system is the hallway.  Felder Decl. at ¶ 24.  But the patent specification clearly says otherwise: "[A] hallway, is not a contamination zone." 12:18-21.

In GE's system, hand-washing is required every time a worker enters a patient room— this is true regardless of the worker's previous location, regardless of whether the room is occupied or empty, and regardless of whether the person is actually contaminated.  Tsouri Decl. at ¶ 46-47, 73-78; Wallace Decl. at ¶¶ 20-21.  This functionality is precisely what Hill-Rom surrendered to overcome a rejection of claim 1: "[The prior art] Applonie [reference] fails to teach determining that the person has been exposed to a contamination zone.  ***Applonie makes***

***any person that wants to enter the [room] wash his/her hands.***  There is no determination that the person is actually contaminated or any suggestion that any area of Applonie is a contamination zone."  Bosco Decl., Exhibit A ('818 FH) at 180 (emphasis added).  Thus, Hill-Rom cannot now argue that claim 1 reads on GE's system. *Festo Corp.*, 535 U.S. at 723. Because GE's Hand Hygiene System does not infringe independent claim 1, it likewise does not infringe any of the claims depending from claim 1.[4] *See* Tsouri Decl. at ¶¶ 82-103.

2)      *Independent Claim 37*

Independent claim 37 requires among other things a method for "determining whether a person who has been contaminated due to exposure to a contamination zone has left the contamination zone."  But GE's system does not determine if a person has been contaminated, has been exposed to a contamination zone, or has left a contamination zone.  Tsouri Decl. at ¶ 104-111; Wallace Decl. at ¶ 20-21.  Instead, as stated above, hand-washing is required every time a person enters a room with a monitored dispenser.  Tsouri Decl. at ¶¶ 46-47, 104-111; Wallace Decl. at ¶ 20-21. As with claim 1, Hill-Rom told the Patent Office concerning claim 37 that there must be a step of "*determining* whether a person who has been contaminated due to exposure to a contamination zone has left the contamination zone."  Bosco Decl., Exhibit A ('818 FH) at 182 (emphasis added).  Hill-Rom argued that a system that "just requires everyone to wash" "does not disclose a contamination zone." *Id.*  Like the prior art, GE's system "just requires everyone to wash" and thus does not meet this claim limitation.  *Festo Corp.*, 535 U.S. at 723.

Claim 37 also requires "determining whether the person has washed her hands within a trigger time since *leaving* the contamination zone." (emphasis added).  But as discussed above,

---

[4] GE's system does not infringe the asserted claims for numerous additional reasons, as set forth in Dr. Tsouri's declaration. Tsouri Decl. at ¶¶ 64-137.

GE's system does not monitor for movement among zones.  Moreover, Dr. Felder only identifies a determination in GE's system of a person *entering* a patient room.  Felder Decl. at ¶ 35.  Dr. Felder thus necessarily believes that entering a room is equivalent to leaving a room.  But this issue also arose during prosecution before the Patent Office, where Hill-Rom argued that these two are not the same.  In distinguishing the Cohen prior art, Hill-Rom asserted: "The badge of Cohen is activated as being contaminated as soon as the badge ***enters*** a monitored area. . . . Claim 28 [which issued as claim 37] clearly requires that the handwashing is performed ***after leaving*** the contamination zone."  Bosco Decl., Exhibit A ('818 FH) at 183 (emphasis added); Tsouri Decl. at ¶¶ 109-110.  Thus, as with the other limitations, Hill-Rom surrendered the very scope that Dr. Felder attempts to recapture, and GE's system therefore does not infringe claim 37.  *See* Tsouri Decl. at ¶¶ 104-111.

### 3)      *Independent Claim 43*

Independent claim 43 discloses a first set of sensors to "track movement of a person through a facility."  Again, GE's system does not track movement of people.  Tsouri Decl. at ¶¶ 46, 114-115; Wallace Decl. at ¶ 20.  Moreover, to overcome a rejection of this claim, Hill-Rom told the Patent Office that "[a] plurality of first sensors . . . would not be in communication with each [sic] ***or have any way of noting movement*** of a person between a plurality of locations. Therefore, any information gathered by the proposed plurality of first sensors 5 ***would not track movement, but rather would be presence information***."  Bosco Decl., Exhibit A ('818 FH) at 188 (emphasis added); Tsouri Decl. at ¶ 115.  Hill-Rom thus surrendered claim scope that would otherwise cover sensors—such as those found in GE's system—that track the present location of a person rather than movement.  Claim 43 also discloses a second set of sensors that communicate with a master station, but in GE's system, the second set of sensors communicates with a reader, not a master station.  Tsouri Decl. at ¶ 116; Wallace Decl. at ¶¶ 12-17.  The reader

and master station are different components, and Hill-Rom has not alleged that they are equivalent.

Lastly, claim 43—like claims 1 and 37—also require the "zone" system that GE's system does not use.  Tsouri Decl. at ¶¶ 117-122; Wallace Decl. at ¶¶ 20-21.  Hill-Rom again argued during prosecution to overcome a rejection of this claim that a system using sensors that do not know the difference between a patient contact zone and some other area is not covered by claim 43. Tsouri Decl. at ¶ 119.  GE's sensors do not detect or distinguish a patient contact zone from any other zone and thus GE's system does not infringe this claim.  Tsouri Decl. at ¶¶ 117-122; Wallace Decl. at ¶¶ 20-21.[5]

> c.    The '470 Patent

Hill-Rom alleges that GE's Hand Hygiene System infringes independent claim 15 and dependent claims 16 and 19 of the '470 Patent.  Claim 15 discloses a computer program that can "access a predetermined hygiene policy" setting out the requirements for hand-washing.  But GE's system is not programmed to access a predetermined policy by, for example, allowing software to access a database with information reflecting various hand-washing requirements. Tsouri Decl. at ¶¶ 177-178; Wallace Decl. at ¶ 28.  Even Dr. Felder acknowledged in his declaration that GE's system is pre-programmed with a time limit for washing hands, and he otherwise does not identify any functionality in GE's system that reflects any ability for it to 'access a policy.' Felder Decl. at ¶ 55.  In this regard, Mr. Wildman misstates the GE system's functionality when he suggests that a facility can change the timing protocol; as Mr. Wallace explained, this simply is not possible.  Wildman Decl. at ¶ 33; Wallace Decl. at ¶ 28.

---

[5] Because GE's Hand Hygiene System does not infringe independent claim 43, it likewise does not infringe any of the dependent claims. GE's system does not infringe the asserted claims for numerous additional reasons, as set forth in Dr. Tsouri's declaration. Tsouri Decl. at ¶ 112-137.

Claim 15 also requires monitoring contact between two items. *See* Claim 15 (disclosing "an instance of contact between a first item and a second item . . . to detect compliance or non-compliance with the hygiene policy"). This limitation is wholly lacking from GE's system—simply put, GE's system does not monitor contact between two items.  Tsouri Decl. at ¶¶ 180-188; Wallace Decl. at ¶¶ 20, 25.  In this regard, Dr. Felder's analysis strains credibility when he opines that the first "item" is a person and the second "item" is the *soap dispenser*.  *See* Felder Decl. at ¶¶ 56, 59.  This argument is nonsensical because if the "second item" is the soap dispenser, then the person would have to wash her hands after touching the soap dispenser.  In other words, the person would need to wash her hands immediately after washing her hands—a never-ending loop of hand-washing.  Tsouri Decl. at ¶¶ 180-188.  Not surprisingly, the claims, specification, and prosecution history refute this tortured position by confirming that the "second item" is **not** the soap dispenser.  *Id*.

Hill-Rom in fact emphasized during the prosecution history—in order to overcome a rejection of this claim—that the "second item" is equipment that can be moved around the hospital:  "Cohen's [prior art] system is designed to communicate with a human user and not to monitor movable inanimate objects such as hospital equipment.  Cohen does not disclose or suggest the possibility of adapting the disclosed system to track hygiene related to movable inanimate objects, such as hospital equipment."  Bosco Decl., Exhibit B ('470 FH) at 66; Tsouri Decl. at ¶ 186.  Thus, the soap dispenser is not the "second item," and GE's system otherwise does not monitor contact between two items.  Tsouri Decl. at ¶ 180-188; Wallace Decl. at ¶¶ 20,

25.  At least for these reasons, the GE Hand Hygiene System does not infringe claim 15 of the '470 Patent.[6]

d. The '544 Patent

Hill-Rom alleges that GE's Hand Hygiene System infringes independent claim 1 and dependent claims 5, 13, and 14 of the '544 Patent.  Claim 1 requires a sensor that can detect the presence of a person in a hand-washing area.  Dr. Felder identifies GE's reader as the claimed "sensor," but GE's reader does not detect the presence of people, whether in a hand-washing area or otherwise.  Tsouri Decl. at ¶¶ 212-220.  Instead, GE's system works as follows: Signposts in hospital rooms continuously broadcast a periodic signal that is received by personnel badges, and the badges are equipped with receivers that detect the infrared light from the signposts.  Tsouri Decl. at ¶¶ 32-36, 212-220; Wallace Decl. at ¶¶ 5-11.  Tellingly, to overcome a rejection of claim 1 by the Patent Office, Hill-Rom argued that systems like GE's are *not* covered by claim 1: "[T]he EMU 140 continuously broadcasts a periodic signal into the monitored area so that when a badge 150 enters the EMU 140's broadcast area, the badge 150 *receives* the signals from the EMU 140.  Therefore, [the prior art] Cohen teaches that the badge 150 detects itself as being in a monitored area, rather than a sensor detecting a badge in a monitored area."  Bosco Decl., Exhibit C ('544 FH) at 73 (emphasis in original) Tsouri Decl. at ¶¶ 216-219.  Thus, once again, Hill-Rom told the Patent Office that its patent was different than systems that worked like GE's system and narrowed the scope of claim 1 to exclude the very way that GE's system functions. *Id*.

---

[6] Because GE's system does not infringe independent claim 15, it likewise does not infringe any of the dependent claims. GE's system does not infringe the asserted claims for numerous additional reasons, as set forth in Dr. Tsouri's declaration. Tsouri Decl. at ¶¶ 176-196.

Claim 1 also requires the hand-washing monitoring device to "generate a compliance signal indicative of whether the person has or *has not*" washed her hands.  GE's system, however, does not generate a signal if a person does not wash her hands.  Tsouri Decl. at ¶ 222; Wallace Decl. at ¶ 23.  Thus, GE's system does not infringe claim 1 for this additional reason.

Finally, claim 1 discloses a "combined signal" that is sent to the "master station," the combined signal containing the identification number of the personnel badge and information indicating that the hand-washing device was used.  The alleged benefit of the "combined signal" is that the invention uses only one sensor to detect a person and to monitor hand-washing, not two separate sensors as in the prior art: "[T]he presently claimed invention only requires <u>one</u> sensor unit (e.g. 108) to implement <u>both</u> of these features. . . . Cohen only discloses and teaches embodiments in which <u>two</u> monitoring units (130 and 140) are used. . . . There, it is explained that Cohen's monitor <u>140</u> detects the presence of the user by periodically broadcasting a signal that is received by the badge 150, while <u>another</u> monitor, the monitor <u>130</u>, determines whether the user wearing the badge has performed the desired action."  Bosco Decl., Exhibit C ('544 FH) at 47-48 (emphasis in original) Tsouri Decl. at ¶ 217.

Hill-Rom further explained during prosecution that the signal combines bits of data indicating hand-washing status with other bits of data indicating the identity of the caregiver, and that these bits are combined into a single packet of data that is transmitted to the master station. Bosco Decl., Exhibit C ('544 FH) at 72; Tsouri Decl. at ¶¶ 225-226.  Hill-Rom then amended claim 1 to require a "combined signal," in order to emphasize that the system "combines a compliance signal and an identification signal and can be generated by a single sensor."  Bosco Decl., Exhibit C ('544 FH) at 26.  But GE's system does not have any such combined signal. Tsouri Decl. at ¶¶ 49, 224-229; Wallace Decl. at ¶ 24.  Instead, GE's system functions like the

prior art Cohen reference, sending separate signals from the hand-washing device and signals from the badge.  *Id.*  These signals are not combined into a single packet of data, and instead, the GE RTLS software must run a program against the separate data streams to determine compliance.  Tsouri Decl. at ¶¶ 42-45, 49, 224-229; Wallace Decl. at ¶ 18-19, 24.  At least for these reasons, the GE Hand Hygiene System does not infringe claim 1 of the '544 Patent.[7]

In sum, GE's Hand Hygiene System does not infringe any of the asserted patent claims. At a minimum, there is a "substantial question" as to whether GE's product contains every element of the asserted claims. Because Hill-Rom cannot show a reasonable likelihood of success on the merits, its motion should be denied.

### 2.    *GE Does Not Induce or Contribute to Any Infringement*

Because there is no direct infringement of any of the asserted claims, GE also does not indirectly infringe the asserted patents under 35 U.S.C. § 271(b)-(c). *See Limelight Networks, Inc. v. Akamai Tech., Inc.*, ___ U.S. ___, slip. op. at 5 (June 2, 2014).  With respect to induced infringement, there is no evidence that GE specifically intended for its customers to infringe the asserted patents.  Hill-Rom alleges no facts to support its allegation that GE "actively and knowingly aid[ed] and abet[ted] another's direct infringement," so its arguments must be rejected.  *See* PI Brief at 13-14; *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part).  As to contributory infringement, the components of GE's system have substantial non-infringing uses.  In fact, the majority of the components in GE's system have been in use since the 1990s—prior to when the applications leading to the asserted patents were even filed—for purposes that have nothing to do with the asserted patents.  *See*

---

[7] Because GE's system does not infringe independent claim 1, it likewise does not infringe any of the dependent claims. GE's system does not infringe the asserted claims for numerous additional reasons, as set forth in Dr. Tsouri's declaration. Tsouri Decl. at ¶¶ 207-236.

Dirksmeier Decl. at ¶ 5.  Indeed, the accused system uses RTLS technology to manage assets such as hospital beds and wheelchairs, and these components were installed long before the asserted patents even issued.  *Id.*; *see In Re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323 at 1337-38 (Fed. Cir. 2012) ("For purposes of contributory infringement, the inquiry focuses on whether the accused products can be used for purposes *other than* infringement.").

3.    *The Hill-Rom Patents Are Vulnerable To Invalidity Challenges*

a.    Legal Overview

A patented invention is anticipated if "all of the elements and limitations of the claim are described in a single prior art reference."  *Hakim v. Cannon Avent Group, Plc*, 479 F.3d 1313, 1319 (Fed. Cir. 2007).  Disclosure in an anticipatory prior art reference can be either express or inherent, and inherent disclosure can exist even if those of ordinary skill in the art at the time were not cognizant of the disclosure.  *See Abbott Labs. v. Baxter Pharma. Prods., Inc.*, 471 F.3d 1363 (Fed. Cir., 2006) ("Inherent anticipation does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure.") (internal citation and quotation omitted).  A reference anticipates a claim, moreover, if one of ordinary skill in the art could use the disclosure to practice the invention without undue experimentation.  *Adv. Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000)

A claim is invalid as obvious under 35 U.S.C. § 103 in several circumstances, including (1) if all elements were present in the prior art, and a person of ordinary skill would have reason to combine the prior art to reach the claimed invention, and (2) a person of ordinary skill in the art would have reason to modify a particular piece or pieces of prior art to arrive at the claimed invention. *See KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 427 (2007).  Under the "expansive and flexible approach" the Supreme Court has mandated for combining and modifying prior art

references to determine whether a claim is invalid as obvious, the Court has noted that when a patent "'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 417 (citation omitted).

> b. Under Hill-Rom's Infringement Theory, the Asserted Claims Are
> Invalid as Anticipated or Rendered Obvious by the Prior Art

If the asserted claims of the Hill-Rom patents are read broadly enough to cover GE's Hand Hygiene System, then those claims are anticipated or rendered obvious by several prior art hand hygiene systems. One such system is disclosed in U.K. Patent Application GB 2,324,397 A to Michael Goodier and Ivan Moore ("Goodier"). Bosco Decl., Exhibit D.[8] Like GE's system, Goodier discloses a hand-hygiene system that requires employees to wash their hands within a certain period of time after entering a room. *Id.* at 3, 6. In Goodier, one sensor is placed at the entrance to the room, and another sensor is placed at a hand-washing station within the room. *Id.* at 1-2, 4-5; Figs. 1 & 2. When an employee enters the room, the sensor at the entrance reads that employee's personal identification badge, and passes a corresponding signal to a central processor. *Id.* at 5. If the sensor at the hand-washing station detects the employee's badge and the occurrence of hand washing, that sensor sends a corresponding signal to the central processor. *Id.* The central processor keeps a record of all employee entries into the restricted area and whether a hand washing has occurred on each entry. *Id*. at 4, 6-7.[9]

---

[8] Goodier qualifies as prior art under at least 35 U.S.C. § 102(b), because it was published more than one year before the earliest possible application date of the asserted patents.

[9] The disclosure in Goodier is broad enough to cover hand hygiene in both the food preparation and healthcare industries. *See* Tsouri Decl. ¶ 140.

As explained by GE's expert, Dr. Tsouri, under Hill-Rom's theory of infringement against GE's system, Goodier anticipates or renders obvious all of the asserted claims.[10]  Tsouri Decl. ¶¶ 138-171, 197-205, 237-246.  With respect to the '818 patent, Goodier receives location information and hand-washing information, determines whether a person who has entered a room has washed her hands within a preset period of time, and updates compliance information for that person.  *Id.* ¶¶ 138-171.  With respect to the '544 patent, Goodier discloses a system that includes a sensor at a hand-washing device, identification badges, a hand-washing monitoring device, a network, and a master station.  *Id.* ¶¶ 237-246.  And with respect to the '470 patent, Goodier discloses software in a central processor that receives information identifying an employee from an identification badge, receives information about the location of the employee from the badge, receives information about the employee's use of the hand-washing station, determines whether the employee complied with a hygiene policy, and generates a report.  *Id.* ¶¶ 197-205.  Accordingly, if Hill-Rom's asserted claims are read broadly enough to cover GE's Hand Hygiene System, then there is at least a substantial question as to the validity of those claims, and that substantial question precludes issuance of a preliminary injunction.  *See Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1351 (Fed. Cir. 2000) ("If the alleged infringer raises a substantial question concerning validity, *i.e.*, asserts an invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue.").[11]

---

[10] Because Goodier was not considered by the Patent Office during prosecution of any of the asserted patents, it will be easier at trial for GE to sustain its burden of proving that the asserted claims are invalid.  *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2251 (2011) ("[I]f the PTO did not have all material facts before it, its considered judgment may lose significant force[, a]nd, concomitantly, the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain.").

[11] Certain asserted claims are also vulnerable to invalidity challenges under 35 U.S.C. § 101, because they are directed to the unpatentable abstract idea of monitoring whether a person has washed her hands.  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 2014 U.S. LEXIS 4303 (2014)

c.      The Asserted Claims of the '470 Patent Are Furthermore Invalid as Indefinite

Hill-Rom is further unlikely to succeed on the merits regarding the '470 Patent because claim 15 and the claims depending therefrom are indefinite.  *See* Tsouri Decl. at ¶ 206.  A patent claim is invalid as indefinite under 35 U.S.C. §112, ¶2 if, when "read in light of the specification delineating the patent, and the prosecution history, [it] fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. ___, slip. op. at 1, 134 S. Ct. 2120 (June 2, 2014).  Here, claim 15 identifies five separate "items":  "an item" that is cleaned, "an item" that is identified, "an item" that is tracked, and "a first item" and "a second item" that are in contact with each other.  Tsouri Decl. at ¶ 206.  On its face, the claim does not define whether any of these "items" are in any way related to each other.  *Id.*  It is impossible to tell, for example, if the "item" that is cleaned is the "first item," the "second item," or a different "item" altogether.  *Id.*  The same applies to any of the other identified "an item" limitations.  *Id.*  Hill-Rom's infringement theory points out the problem.  Hill-Rom argues that "an item" that is cleaned, "an item" that is identified, and "an item" that is tracked are all referring to "a first item," despite the fact that the claim does not so provide.  The claims are so vague that there is no reason why one, two, or three of the "an item" limitations could not refer to "a second item" or some other "item" or separate "items."  As a consequence, one of ordinary skill in the art is unable to determine the scope of claim 15, or any of the claims that depend therefrom, with reasonable certainty.  *See Regents of the Univ. of Minn. v. AGA Med. Corp.*, 2011 U.S. Dist. LEXIS 144194, *43-46 (D. Minn. Dec. 14, 2011) ("[T]he Court must identify what the phrase modifies, and that is an impossible task.  Needless to say, if

---

(finding claims directed to abstract idea unpatentable); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (finding that "abstract ideas are not patentable").

the Court cannot identify the thing that [the invention operates upon], neither can a potential

infringer."). Thus, Hill-Rom is unlikely to succeed on the merits for this additional reason.

### B.      Hill-Rom Has Not Shown Irreparable Harm

Even if Hill-Rom had shown a likelihood of success on the merits—which it has not—

Hill-Rom would still not be entitled to any injunctive relief at least for the following reasons: (1)

Hill-Rom delayed in bringing suit; (2) GE's continued sale of its Hand Hygiene System during

the pendency of this litigation would have little impact, if any, on Hill-Rom's current or future

business; (3) Hill-Rom's reputation and goodwill are not dependent upon sales of hand-hygiene

systems; (4) sales of hand-hygiene systems do not drive sales of other products; and (5) any

losses Hill-Rom may sustain during the pendency of this litigation are easily quantifiable.  *See*

*generally* J. Malackowski Decl., submitted herewith.

"[T]he irreparable harm inquiry seeks to measure harms that no damages payment,

however great, could address."  *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed.

Cir. 2012).  Demonstrating irreparable harm requires a "*clear showing* that [plaintiff] is at risk of

irreparable harm, which entails showing a likelihood of substantial and immediate irreparable

injury."  *Apple,* 695 F.3d at 1374 (quotations omitted) (emphasis added); *Direx Israel, Ltd. v.*

*Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) ("Moreover, the required

'irreparable harm' must be 'neither remote nor speculative, but actual and imminent.'").  No

presumption of irreparable harm arises even if a plaintiff proves likelihood of success on the

merits. *See Automated Merchandising Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 301 (Fed. Cir.

2009) (describing the presumption of irreparable harm as "discarded" in the wake of the

Supreme Court's *eBay* decision). As demonstrated below and in the supporting expert

declaration of James Malackowski, Hill-Rom has not shown any irreparable harm.

       1.    *Hill-Rom's Delay in Seeking a Preliminary Injunction is Fatal to Its Claim of Irreparable Harm*

As an initial matter, Hill-Rom is not entitled to a preliminary injunction because it substantially delayed in bringing its motion.  Indeed, a patentee's delay in seeking injunctive relief belies the notion that it would suffer irreparable harm absent an injunction.  *See T.J. Smith & Nephew Ltd. v. Consolidated Medical Equipment, Inc.*, 821 F.2d 646, 648 (Fed. Cir. 1987) (delay is "incompatible" with irreparable harm); *see also Apple Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314 at 1325 (Fed. Cir. 2012) (delay suggests that "the patentee is not irreparably harmed by the infringement"); *Nutrition 21 v. U.S.*, 930 F.2d 867, 872 (Fed. Cir. 1991) (delay suggests a lack of irreparable harm).

Specifically, Hill-Rom claims to have brought its motion based on its discovery of GE's Hand Hygiene System at the Summerville, South Carolina, facility.  *See* PI Brief at 5.  While Hill-Rom does not disclose precisely when it learned of GE's system at Summerville, GE has been marketing its Hand Hygiene System since 2009, and by November 2012, GE had already installed approximately 270 sidecars (and 181 staff badges) in the Summerville facility. Dirksmeier Decl. at ¶ 8, 13.  GE also openly distributed its information sheets at Summerville throughout the 2012 time period.  Dirksmeier Decl. at ¶¶ 17-18.  Moreover, GE's Hand Hygiene System is not discreet—the most open and obvious evidence of the installation is the sidecar, which is approximately 8" by 5", and is located next to each soap or alcohol dispenser. Dirksmeier Decl. at ¶ 12.  The system also uses staff badges, which beep every time they receive a signal from a dispenser.  *Id*.  GE's system was also described in the press in numerous outlets—including Reuters and the Charleston Regional Business Journal—starting at least in April 2013.  Dirksmeier Decl. at ¶ 19.  Finally, the Summerville facility buys products from Hill-

Rom, including at least Hill-Rom's hospital beds and Nurse Call system. Dirksmeier Decl. at ¶ 14. Thus, Hill-Rom has known about or should have known about GE's system for years.

If Hill-Rom's alleged irreparable harm is as urgent as it claims, then Hill-Rom should have filed its injunction request years ago, and certainly no later than a year ago when it claims to have learned that GE had entered this market. *See* McMullin Decl. at ¶ 34 ("In approximately the Spring of 2013, Hill-Rom learned that GE was entering the nascent market for RTLS-based hand hygiene systems . . . ."). Indeed, even if Hill-Rom somehow did not know about GE's entrance into the market in 2009, its installation in Summerville in 2012, or the press reports in early 2013, Hill-Rom undisputedly had actual knowledge of GE's system by "the Spring of 2013." But Hill-Rom offers no explanation for its delay in seeking a preliminary injunction. Courts have found that delays of as little as two months are fatal to a preliminary injunction request. *See Novozymes A/S v. Danisco A/S*, 2010 WL 3783682, at *4 (W.D. Wis. 2010) (finding that the patentee's two month delay in seeking a preliminary injunction further showed it would not suffer irreparable harm in having to wait for a full trial as the court had a fast docket, and therefore the full trial would be set a mere few months later); *see also High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed.Cir.1995) ("[a]bsent a good explanation, ... 17 months is a substantial period of delay that militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief."); *Capital Machine Co., Inc. v. Miller Veneers, Inc.*, 2010 WL 3000769, at *1 (S.D. Ind. 2010) (denying patentee's motion for a preliminary injunction without even considering the likelihood of success on the merits because the court found that the patentee could not show irreparable harm where it, *inter alia*, waited for over a year after filing the suit to

move for a preliminary injunction).  Here, Hill-Rom's delay in bringing suit fatally undermines its allegations of urgency.

Moreover, the earliest of Hill-Rom's patents issued over ten years ago in 2004; Hill Rom's insistence that "[t]he window of opportunity for Hill-Rom to realize the value of its patents is *now*" is thus difficult to reconcile with its delay in bringing suit and even longer delay in entering the relevant market.  PI Brief at 19 (emphasis in original).  Hill-Rom's motion should thus be denied for these reasons.

> 2.   *Hill-Rom's Lost Sales and Market Share Arguments Are Purely Speculative*

Next, Hill-Rom presents no evidence of actual past or future lost sales or contracts. Instead, Hill-Rom only speculates over the potential for an unknown number of lost sales in unknown locations at unknown times to unknown customers.  But speculative opportunity loss and the "loss" of potential, unknown, future market share is not a ground for injunctive relief. *See, e.g., Automated Merchandising Systems, Inc.*, 357 F. App'x at 301 (reversing district court finding of irreparable harm since the evidence showed only a "speculative loss" of sales and market share); *see also Nutrition 21,* 930 F.2d at 871 ("[N]either the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial.").

The sole support for Hill-Rom's claim of any lost sales is the following statement from Hill-Rom's fact witness, Mr. McMullin: "Hill-Rom . . . is aware of at least one instance in which it initially made a sale, but the sale was then cancelled when the healthcare facility was told by HCA management that it was required to use GE's AgileTrac system."  McMullin Decl. at ¶ 37. But this statement—aside from being rank, inadmissible hearsay—is factually misleading at least because (1) HCA's facilities have no obligation to use GE's system, and (2) Hill-Rom admits

that it has enjoyed its own "success promoting its RTLS-based hand hygiene system within some segments of HCA." *See* Dirksmeier Decl. at ¶ 20 (explaining that HCA's contract with GE does not obligate HCA to purchase any of its Hand Hygiene Systems); McMullin Decl. at ¶ 31 (acknowledging Hill-Rom's success with HCA).  Even if Mr. McMullin's statement was true and admissible, it would be vastly insufficient to warrant relief as extraordinary as a preliminary injunction.  *See, e.g., Automated Merchandising*, 357 F. App'x at 300-301 ("lost sales standing alone are insufficient to prove irreparable harm" (internal quotations omitted)).

Moreover, the type of evidence that Hill-Rom offered—declarations replete with speculation and hearsay—is precisely what this District rejected in *Dynamic Manufacturing*.  *See Dynamic Mfg. Inc. v. Craze*, 1998 WL 241201 at *4 (E.D. Va. Feb. 23, 1998) (denying preliminary injunction where plaintiff's only evidence of harm—lost sales—was one witness's anecdotal testimony of a customer choosing between products, which was deemed "speculative at best").  Other courts have also repeatedly rejected such speculation in denying preliminary injunction motions. *See Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC,* 708 F. Supp. 2d 527, 533 (D. Md. 2010) (denying motion where plaintiff's evidence—an affidavit asserting lost investments, "lo[ss] of existing customers and potential customers," and market share erosion—were insufficient to prove irreparable harm); *MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, 726 F. Supp. 2d 604, 639 (W.D. Va. 2010) ("Therefore, there clearly must be more than the potential for lost sales as a result of a competitor product entering the market to establish irreparable harm.") (denying preliminary injunction where plaintiff speculated over potential lost sales); *Automated Merchandising Sys., Inc.*, 357 Fed. Appx. at 300-01 (noting that the affidavit by plaintiff's president only identified the loss of one customer, which is insufficient loss of market share to warrant an injunction); *Illinois Tool Works, Inc. v. Grip–Pak, Inc.*, 906 F.2d 679

(Fed. Cir. 1990) (finding potential lost sales insufficient to show irreparable harm and nothing that to find otherwise "would require a finding of irreparable harm to every manufacture/patentee, regardless of circumstances.").

Hill-Rom cannot prove any lost sales or market share because there are virtually no sales to lose.  For instance, there are currently almost six thousand hospitals in the United States, but GE has installed its AgileTrac™ software system in only fifty-three total hospitals.  Dirksmeier Decl. at ¶¶ 9, 30.  Out of those 53 hospitals, only five have installed GE's Hand Hygiene System. *Id.*  GE presently has no sales orders for its Hand Hygiene System in any HCA hospitals. Dirksmeier Decl. at ¶ 30.  Hill-Rom also specifically argues that it is concerned about being disadvantaged over GE's relationship with HCA, but there are only 165 HCA hospitals, a small percentage (less than 3%) of the total market. Dirksmeier Decl. at ¶¶ 9, 30. Hill-Rom's concern is also belied by the fact that Hill-Rom has in fact made a hand hygiene system sale at an HCA hospital.  McMullin Decl. at ¶¶ 32-33; *see also id.* at ¶ 42 ("HCA and Hill-Rom have had ongoing discussions regarding expansion of usage . . . ."), ¶ 43 ("Hill-Rom believes that [it] . . . could increase substantially its annual sales to HCA.").  Hill-Rom can thus hardly be heard to complain that it will be unable to secure a contract with HCA due to GE's alleged infringement when Hill-Rom has *already secured a contract with HCA* and has positive expectations of substantial future sales.

Next, although Hill-Rom claims that the hand hygiene market is a multi-million dollar business, in reality, GE's limited sales of its Hand Hygiene System has netted total *revenues* of only $357,412.66.  Dirksmeier Decl. at ¶¶ 23, 31.  Outside of GE and Hill-Rom, at least fifteen other companies are currently competing in the hand hygiene monitoring market.  Dirksmeier Decl. at ¶ 21; Malackowski Decl. at ¶ 12.  Although there is no evidence that Hill-Rom—rather

than its fifteen competitors—would have sold its hand-hygiene system to GE's five customers but for GE's presence in the market, even assuming that Hill-Rom would have made those sales, Hill-Rom's lost profits could be no more than $357,412.66.

Hill-Rom's allegations concerning lost ancillary sales are also purely speculative and unsupported by the evidence.  In fact, GE's hand hygiene product has *never* driven any sales of any RTLS-enabled installations.  *Compare* Dirksmeier Decl. at ¶ 25 ("The hand hygiene product has *never* driven any GEHC RTLS-enabled installations.") *with* McMullin Decl. at ¶ 20 ("Hill-Rom anticipates that it will make significant additional sales of its RTLS and other proprietary information technology solutions and product portfolio if it is able to sell its RTLS-based hand hygiene system."); *see also* Malackowski Decl. at ¶¶ 22-25.  The discrepancy in this evidence alone is sufficient to raise a substantial question as to Hill-Rom's allegations.

Finally, even if Hill-Rom's declarations were probative, they prove nothing about whether Hill-Rom will lose any future sales to *GE*.  Indeed, since Hill-Rom has not chosen to enter this market in any significant form, it has no market share to lose, nor does it have any sales data from which the Court could reasonably infer some baseline level of consumer demand for its products.  Hill-Rom therefore cannot present any credible evidence that, absent an injunction, it would make *any sales at all*, much less that some reasonably ascertainable portion of these hypothetical sales would be lost to GE.  In this regard, Hill-Rom's expert, Dr. Reiff, is simply wrong that "the patent-holder and the [alleged] infringer are head-to-head competitors for key contracts."  Decl. at ¶ 30.  Indeed, given Hill-Rom's minimal market share and the fifteen other participants in addition to GE in the hand-hygiene market, Hill-Rom's allegation that it can ascribe any asserted diversion of customers to GE with any degree of certainty is fanciful.  Malackowski Decl. at ¶¶ 11-13; *see Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1348

(Fed. Cir. 2006) (noting that the Court "do[es] not doubt that generic competition will impact Abbott's sales . . . but that alone does not establish that Abbott's harm will be irreparable.").

> 3. *Hill-Rom's Price Erosion and Loss of Reputation and Goodwill Arguments Are Likewise Unsupported by the Evidence*

Nor does Hill-Rom provide any evidence to support its speculative claim of irreparable harm in the form of price erosion and loss of goodwill. *See* Malackowski Decl. at ¶¶ 26-29. Because Hill-Rom sat on its invention for over a decade, Hill-Rom has no customer goodwill to lose, nor does it have an established pricing structure that GE's sales could conceivably erode. Such purely speculative injury is not the basis for an irreparable harm finding. *Automated Merchandising Sys., Inc.*, 357 Fed. Appx. at 300-01 (vacating preliminary injunction and finding that plaintiff's price erosion theory was supported only by conclusory statement that it was possible). Moreover, to protect Hill-Rom's alleged reputation and goodwill and prevent any alleged price erosion, Hill-Rom would need to seek injunctive relief against its fifteen other competitors, which Hill-Rom has not done. Thus, Hill-Rom's reputation and price erosion arguments are without merit.

> 4. *Hill-Rom's Infrastructure Investment and Switching Cost Arguments Are Overstated*

Hill-Rom also vastly overstates the infrastructure and switching costs for the accused technology. *See* PI Brief at 18; McMullin Decl. at ¶ 26. Hand-hygiene systems are merely add-on products to existing RTLS infrastructures, and the hygiene system can be switched to another infrastructure with an adapter. *See* Dirksmeier Decl. at ¶¶ 5-7, 10, 11. Moreover, the reasons for the slowness in hospitals acquiring hand-hygiene solutions is not due to infrastructure costs, but rather due to the highly competitive nature of the market. Dirksmeier Decl. at ¶ 26; Malackowski Decl. at ¶¶ 17-21. As noted above, there are presently seventeen competitors vying to supply hand-hygiene systems.

5.    *Monetary Damages Will Sufficiently Compensate Hill-Rom for Any Alleged Infringement*

Hill-Rom's allegation that monetary damages will be insufficient to compensate Hill-Rom for any alleged harm is wholly without merit.  First, "there is no *presumption* that money damages will be inadequate in connection with a motion for an injunction pendente lite.  Some evidence and reasoned analysis for that inadequacy should be proffered."  *Nutrition 21,* 930 F.2d at 871–72 (emphasis in original) (vacating grant of a preliminary injunction where only evidence was speculation as to the loss of market share).  In fact, the Federal Circuit has stated that lost sales alone are *presumed* compensable through damages. *Automated Merchandising Sys., Inc.*, 357 Fed. Appx. at 301 (vacating preliminary injunction: "Lost sales (without more) are presumed to be compensable through damages, so they do not require injunctive relief.").

Any alleged harm that Hill-Rom has suffered is easily quantifiable with monetary damages.  Malackowski Decl. at ¶¶ 30-36; *see Pergo, Inc. v. Faus Grp., Inc.*, 401 F. Supp. 2d 515, 527-29 (E.D.N.C. 2005) (denying preliminary injunction where even assuming even that evidence of lost sales was sufficiently shown, this harm could be easily calculated and thus was not irreparable).  Here, most of GE's revenue is generated from the initial sale of the system installation, a license fee for the software, and the various hardware components.  Dirksmeier Decl. at ¶ 24.  Subsequent revenue streams include a yearly fee for maintenance and support services for the hardware and software.  *Id.*  All of these amounts are readily quantifiable, and Hill-Rom's lost profits cannot be more than GE's $357,412.66 in revenue.  *Id.* at ¶¶ 23-24.  GE has no future sales that Hill-Rom could have otherwise made, and Hill-Rom has already secured a sales relationship with HCA.  Thus, Hill-Rom has not and will not sustain any damages that cannot be quantified.

> 6.     *The Only Hill-Rom Parties That Could Suffer Irreparable Harm Have No Standing to Assert the Patents*

Finally, Hill-Rom's complaint alleges that Hill-Rom Services (HRS) has all property rights to the asserted patents, and that Hill-Rom Manufacturing (HRM) and Hill-Rom Company (HRC) are the parties that manufacture and distribute the systems that use the asserted patents. Complaint at ¶¶ 10, 12, 14.  Thus, HRS, as a mere patent-holding entity, cannot possibly be suffering irreparable harm because it does not make or distribute any competing products.  And HRM and HRC—as manufacturers and distributers—have no standing to seek injunctive relief because they do not own the asserted patents.  *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010); *Sicom Sys., Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005).  Because the only party with possible standing in this case—HRS—cannot possibly be suffering any harm, Hill-Rom's motion should be denied for this additional reason.

### C.     The Balance of Hardships Does Not Weigh in Hill-Rom's Favor

The balance of the hardships does not weigh in Hill-Rom's favor, which is another, independent basis to deny Hill-Rom's request.  *See Winter*, 555 U.S. at 24.  First, Hill-Rom argues that GE is a large company that sells many products; but this factor weighs in GE's favor because it shows GE's ability to satisfy any judgment. *See Dynamic Mfg. Inc. v. Craze*, 1998 WL 241201 at *13 (E.D. Va. Feb. 23, 1998) (denying preliminary injunction in part because defendant would be able to pay any damages).  Moreover, Hill-Rom itself is a large company that sells many products, so this factor is neutral at best.  *See, e.g.,* PI Brief at 22 (identifying Hill-Rom's other product lines, including NurseCall, WatchChild, and hospital beds); Malackowski Decl. at ¶ 14.  Indeed, Hill-Rom's sales of its competing hand-washing monitoring product are only 0.3% of its overall revenues.  *Id.*  Finally, aside from its failure to identify any actual lost sales, Hill-Rom does not allege that absent a preliminary injunction, Hill-Rom will

have to change any of its business plans, layoff its employees, discontinue any products, or otherwise do anything but carry out its business as usual.  Thus, Hill-Rom provides no evidence of any actual harm that outweighs disrupting GE's business while this litigation is pending.

### D.   The Public Interest Does Not Support Granting a Preliminary Injunction

Finally, the public interest does not support an injunction.  First, the public has a strong interest in having a wide choice of products.  *See Nano-Second Tech. Co. v. Dynaflex Int'l*, 2011 U.S. Dist. LEXIS 111836 at *13 (C.D. Cal. Sept. 28, 2011) (The "public interest in continued market competition for these products disfavors a preliminary injunction."); *Wachovia Sec., LLC v. Gates*, WL 1803612 at *3 (E.D. Va. Apr. 21, 2008) (denying preliminary injunction as against the public interest where the injunction would prevent customers from engaging in the free market of relevant products and services).  Second, GE's product saves lives.  This District has found that with important healthcare services, entering an injunction "would clearly be against the interests of public health and safety."  *Hampton Univ. v. Accred. Council For Pharm. Edu.*, 611 F. Supp. 2d 557, 569-72 (E.D. Va. 2009) (denying a preliminary injunction even though most factors weighed in its favor due to the "weighty public interests at stake" where the "case involves medical professionals . . . who are responsible for preparing and dispensing life-saving (and, in some cases of error, life-threatening) medications in hospitals").  Here, Hill-Rom alleges that as many as 75,000 people die annually from healthcare-associated infections and that hand-hygiene compliance "translates to human lives saved."  PI Brief at 2-4.  The public interest thus cannot be served by an injunction on life-saving products.

## V.   CONCLUSION

Hill-Rom has not shown that it is entitled to a preliminary injunction. GE has raised substantial questions of non-infringement and invalidity, and Hill-Rom failed to put forth sufficient evidence of irreparable harm. For these reasons, Hill-Rom's motion should be denied.

Dated:   June 23, 2014

Respectfully submitted,

By: */s/ Robert M. Tata*

Robert M. Tata (VSB #30101)
Wendy C. McGraw (VSB #37880)
HUNTON & WILLIAMS LLP
500 E. Main Street, Suite 1000
Norfolk, VA   23510
(757) 640-5300
(757) 625-7720 *fax*
btata@hunton.com
wmcgraw@hunton.com

David J. Lender (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY   10152
(212) 310-8000
(202) 833-3035 *fax*
david.lender@weil.com

Brian E. Ferguson (*pro hac vice*)
Robert T. Vlasis, III (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W., Suite 900
Washington, DC   20005
(202) 682-7000
(202) 867-0940 *fax*
brian.ferguson@weil.com
robert.vlasis@weil.com

*Attorneys for General Electric Company*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Stephen E. Noona, Esq.
Lauren Tallent Rogers, Esq.
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA  23510
senoona@kaufcan.com
ltrogers@kaufcan.com

J. Michael Showalter, Esq.
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 6600
Chicago, IL  60606
mshowalter@schiffhardin.com

Stacie R. Hartman, Esq. *(pro hac vice)*
A. Taylor Corbitt, Esq. *(pro hac vice)*
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 6600
Chicago, IL  60606
shartman@schiffhardin.com
tcorbitt@schiffhardin.com

Stephen M. Haskins, Esq. *(pro hac vice)*
SCHIFF HARDIN, LLP
One Market
Spear Street Tower, Thirty-Second Floor
San Francisco, CA  94105
shankins@schiffhardin.com

Samuel D. Almon, Esq. *(pro hac vice)*
SCHIFF HARDIN, LLP
One Atlantic Center, Suite 2300
1201 West Peachtree Street
Atlanta, GA  30309
salmon@schiffhardin.com

*Attorneys for Plaintiffs Hill-Rom Company, Inc.*
*Hill-Rom Services, Inc. and Hill-Rom Manufacturing, Inc.*

/s/ Robert M. Tata
Robert M. Tata (VSB #30101)
HUNTON & WILLIAMS LLP
500 E. Main Street, Suite 1000
Norfolk, VA  23510
(757) 640-5300
(757) 625-7720 *fax*
btata@hunton.com

*Attorney for General Electric Company*